STATE OF WEST VIRGINIA

*v.*

STEVEN CHARLES HARRISTON

(No. 13933)

Decided April 10, 1979.

*Brown H. Payne, Franklin D. Cleckley* for petitioner.

*Chauncey H. Browning*, Attorney General, *Michael G. Clagett*, Assistant Attorney General, for defendant.

HARSHBARGER, JUSTICE:

After having been tried by a jury which could not agree, Steven Harriston was again tried, and convicted by a jury in the Circuit Court of Mingo County of delivery of marijuana and sentenced to one to five years in the penitentiary.

The State's evidence was that he sold a quantity of the substance to Trooper Faulknier, a state police undercover agent.

## I.

Did the court err in allowing Faulknier to be excluded from witness sequestration? The government moved for sequestration of witnesses, asking at the same time that the trooper be allowed to remain and "assist the State." Defendant's objection was overruled on the basis of *State v. Wilson*, W. Va., 207 S.E.2d 174 (1974).

Sequestration has never been a matter of absolute right in this State.[1] We last addressed the question in the *Wilson* case. There the defendant was convicted of voluntary manslaughter and appealed, contending *inter alia*, that it was error for the court to exclude police

---

[1] Very few states make sequestration an absolute right. Among those that do are Georgia and Maryland. *See, Parham v. State*, 135 Ga. App. 315, 217 S.E.2d 493 (1975) and *Nickerson v. State* 22 Md. App. 660, 325 A.2d 149 (1974).

officers from the sequestration of the witnesses. The pertinent *Wilson* points are:

> 4. The question as to which witnesses may be exempt from a sequestration of witnesses ordered by the court lies within the discretion of the trial court, and unless the trial court acts arbitrarily to the prejudice of the rights of the defendant the exercise of such discretion will not be disturbed on appeal.
>
> 5. "It is within the judicial discretion of the trial court to permit a witness for the state, who is familiar with the facts on which the prosecuting attorney relies to establish the guilt of the accused, to be present in court during the trial to aid him in conducting the examination of other witnesses." Point 5, syllabus, *State v. Hoke*, 76 W. Va. 36 [84 S.E.1054].
>
> 6. The rule with regard to excluding police officers from a sequestration of witnesses is that it is not error to do so if the testimony of such police officers is not crucial to the state's case and not prejudicial to the defendant.

Petitioner would have us adopt the further standard expressed in *James v. State*, 143 Ga. App. 696, 240 S.E.2d 149 (1977), to refine *Wilson*.[2]

> The burden of showing an exception (where the witness is needed to advise the district attorney, or where the absence of an official witness would impair the efficiency of the court) is on the state. If that burden is carried, the witness should then be sworn first in order that his testimony be taken before he has the unfair advantage of hearing the other witnesses for the state ... [and] failure to do so or offer a sufficient reason

---

[2] The policemen in *Wilson* testified only on rebuttal about credibility of defendant's wife, and authenticated certain physical evidence. The court said that had any of their testimony been crucial it would have been reversible error to exclude them from the order. Here, Faulknier's testimony *was* the State's case because he was its only witness to the sale with which defendant was charged.

for not doing so is reversible error. [Citations omitted] 240 S.E.2d at 150.

The State contends that one officer should be allowed to remain in the courtroom, excluded from sequestration, to assist the prosecution.

Most jurisdictions and authorities agree that sequestration of witnesses is a matter within the discretion of the trial court,[3] and is reviewable only upon a showing of abuse of that discretion or manifest injustice to the defendant.[4] At least one state has held that such discretion is not reviewable,[5] and another that where sequestration is granted and then violated, there is reversible error only upon a showing of prejudice.[6]

[3] *See, United States v. Mallis,* 467 F.2d 567 (3d Cir. 1972); *United States v. Pellegrino,* 470 F.2d 1205 (2d Cir. 1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1972); *United States v. Frazier,* 417 F.2d 1138 (4th Cir. 1969), *cert. denied,* 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970); *United States v. Garafolo,* 385 F.2d 200 (7th Cir. 1967); *Elrod v. State,* 281 Ala. 331, 202 So.2d 539 (1967); *State v. Parker,* 22 Ariz. App. 111, 524 P.2d 506 (1974); *Jorgensen v. People,* 178 Colo. 8, 495 P.2d 1130 (1972); *Grace v. State,* Del. Supr., 314 A.2d 169 (1973); *People v. Adams,* 41 Ill.2d 98, 242 N.E.2d 167 (1968); *Hilligoss v. State,* 253 Ind. 443, 255 N.E.2d 101 (1970); *State v. Bittner,* 209 Iowa 109, 227 N.W. 601 (1929); *Armstrong v. Commonwealth,* Ky., 517 S.W.2d 233 (1974); *State v. Lewis,* 250 La. 876, 199 So.2d 907 (1967); *State v. Fernald,* Me., 248 A.2d 754 (1968); *People v. Buero,* 59 Mich. App. 670, 229 N.W.2d 880 (1975); *State v. Olek,* 288 Minn. 235, 179 N.W.2d 320 (1970); *Pilcher v. State,* Miss., 296 So.2d 682 (1974); *State v. Radi,* 168 Mont. 320, 542 P.2d 1206 (1975); *State v. Talbot,* 135 N.J. Super. 500, 343 A.2d 777 (1975); *State v. Blake,* 113 N.H. 115, 305 A.2d 300 (1973); *Trowbridge v. State,* Okla. Cr., 502 P.2d 495 (1972); *State v. Bishop,* 7 Or. App. 558, 492 P.2d 509 (1972); *Fuller v. State,* Tenn. Cr. App. 625, 475 S.W.2d 188 (1971); *Mankin v. State,* Tex. Cr. App., 451 S.W.2d 236 (1970); *Hensley v. City of Norfolk,* 216 Va. 369, 218 S.E.2d 735 (1975); and *State v. McGee,* 6 Wash. App. 668, 495 P.2d 670 (1972).

[4] *United States v. Maestas,* 523 F.2d 316 (10th Cir. 1975); *United States v. Windsor,* 417 F.2d 1131 (4th Cir. 1969).

[5] *See, Lewis v. State,* 55 Ala. App. 140, 313 So.2d 566 (1975).

[6] *But see State v. Tillman,* 122 N.J. Super. 137, 299 A.2d 419 (1973). The New Jersey Superior Court reasoned that a showing of prejudice would be almost impossible because no one can tell how a witness's testimony might have differed had the sequestration motion been granted. Therefore, when a motion for sequestration was arbitrarily denied a new trial was ordered.

912

The majority rule automatically excludes law enforcement officers from sequestration orders, either by statute or judicial tradition.[7] *Grace v. State*, Del. Supr., 314 A.2d 169 (1973). *See also, Ratliff v. State*, Fla. Dist. Ct. App., 256 So.2d 262 (1972) (police officers excluded because they are disinterested in the outcome of the case). However, some courts have specifically stated that police officers are not exempt from sequestration merely because of their position, *Nickerson v. State*, 22 Md. App. 660, 325 A.2d 149 (1974) and *Allen v. State*, Tex. Cr. App., 536 S.W.2d 364 (1976). The rule has been qualified somewhat by the Massachusetts Court in *Commonwealth v. Clark*, 3 Mass. App. 481, 334 N.E.2d 68 (1975) where the court approved the exemption of an investigating officer only when his presence was essential to the management of the case.

Following the majority rule, as we did in *Wilson*, we find that the trial court in this case did not abuse its discretion by excepting Trooper Faulknier from its sequestration order.

> "The primary purpose of the rule . . . [sequestration] is to insure, as far as possible, that one witness shall not be taught, schooled or prompted by another's testimony; its application avoids an artificial harmony of testimony and may also avoid the outright manufacture of testimony." [Citations omitted] *Nickerson v. State*, 22 Md. App. 660, 669, 325 A.2d 149, 154 (1974).

Trooper Faulknier was the state's first witness and thereby gained no education from testimony of other state witnesses. We agree with *James v. State, supra*, insofar as it approves the policy of having the excepted police officer testify first. *See also, United States v. Frazier*, 417 F.2d 1138 (4th Cir. 1969),[8] *cert. denied*, 397 U.S.

---

[7] The reason for excepting police officers is his importance as a trial aid for the prosecuting attorney because of his knowledge of the case. *Grace v. State, supra*. Among the states that follow this rule are Delaware, Florida, Illinois, Montana and Louisana.

[8] In *Frazier*, the court said:

This is not to say that when witnesses are sequestered from the courtroom, an FBI agent is automatically exempt from the

1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970). As long as the officer testifies first, there is no rationale for not excluding him from sequestration.

## II.

The second issue is whether the court erred by allowing only a part of a proceeding during which was taken a deposition by a former court reporter, Mrs. Hall, to be read to the jury.

Her deposition was taken because she had physical evidence, the marijuana from petitioner's first trial, in her possession when she moved to Charlottesville, Virginia, and kept it there until the state commenced preparation for the second trial. Before she testified on chain of custody of the marijuana, the trial judge who presided at the deposition summarized his recollection of what had happened in the case prior to the deposition date. At the trial, defense counsel objected to reading only the witness' testimony without the judge's narrative.

We find no error in the trial judge's ruling that excluded from being read to the jury his own introductory comments during the deposition proceeding. In fact, their inclusion would have, it seems to us, given inordinate weight and buttressed the deposer's testimony, and may well have been error. He was not a witness, not sworn, and his remarks were merely to "set the stage" for the proceedings and had no probative value at all.

order. The matter should not be decided routinely but in a genuine exercise of discretion, according to the attendant circumstances. Where the agent is the one in charge of the case and his presence is necessary, the court may permit him to remain although other witnesses are excluded. *In that case, if it is anticipated that the agent will be called as a witness he should ordinarily be called first so as to avoid giving the prosecution unfair advantage or the appearance that the prosecution is being favored. This should be the order of presentation unless, in the judge's considered opinion, it would unduly break the continuity and seriously impair the coherence of the Government's proof.* Of course, if the agent is permitted to remain in the courtroom and then rebuttal testimony from him is unexpectedly required, he should be given the opportunity to testify. [Our emphasis] [417 F.2d at 1139]

## III.

The third issue involves the authenticity of the marijuana itself. Mrs. Hall testified in her deposition that after the first trial she put the evidence in a notebook and put a rubber band around the notebook. She then put the notebook in a filing cabinet. When she was moving to Virginia, she put the notebooks from the file into cardboard boxes and she and her husband carried them to their car trunk and locked it. She opened the trunk once to get a tool box on the way to Virginia but closed and locked it again immediately, The boxes remained in the trunk with the car parked on a street for approximately three days before she and her husband carried them into their new house. She unpacked them and put them in a new file cabinet to which she had the only key. While the boxes were in the trunk of the car, her husband also had keys to the trunk, but she had specifically instructed him not to open it. She testified that when she got the exhibit ready to mail for trial, it was in the same condition that she left it. Mr. Maynard, the prosecuting attorney, testified as to what happened to the marijuana after he received it from Mrs. Hall by certified mail.

We find the chain adequately probed by the State. *State v. Johnson*, W. Va., 201 S.E.2d 309 (1973).

## IV.

The fourth question is whether the court assumed the role of prosecutor in questioning Mrs. Hall during her deposition. *State v. Perkins*, 130 W. Va. 708, 45 S.E.2d 17 (1947) deals with this question.

We have reviewed this record, including the portion of the deposition by Mrs. Hall that defendant complains about. At the *in camera* hearing during which the mechanics were decided upon for introducing the deposition, and objections were made by defense counsel to those portions of the deposition proceedings record that he deemed should or should not be read, he wanted the entire deposition read, as he argues in his second as-

signment of error here. No objection at all was made then to including in that part of the proceedings read to the jury—the questioning of Mrs. Hall—those questions propounded by the trial judge at the deposition proceedings.

Our opinion is that even if counsel had objected at the trial, the court could properly have ruled against him, because the trial judge's inquiries made at the deposition proceedings without objection, seemed in no way directed to any other purpose than clarification of the chain of custody details.

In other words, the learned judge's inquiries at the deposition of Mrs. Hall were not then objected to, nor were they objected to when the deposition was proposed to be read at trial. In fact, at trial, the very opposite was urged by defense counsel—that every word of the proceedings, including the court's introductory remarks, be read to the jury.

We are not inclined to find error, at defendant's insistence, in the trial judge's questioning that defendant found unobjectionable at the time and found unobjectionable later when her testimony, including that elicited by the judge, was proposed to be read to the jury.

*Affirmed.*