## A96A0956. MITCHELL v. THE STATE.
### (476 SE2d 604)

JOHNSON, Judge.

Louise Dallas Mitchell was convicted of one count of violating the Georgia Controlled Substances Act. She appeals the denial of her motion for new trial. We affirm.

1. Mitchell challenges the sufficiency of the evidence to sustain her conviction. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court . . . does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Powell v. State*, 218 Ga. App. 556 (462 SE2d 447) (1995). So viewed, the evidence shows that undercover agent Jerald Dalton of the Georgia Bureau of Investigation went to Mitchell's house, asked Mitchell to sell him some cocaine, and gave Mitchell $200. Mitchell then gave a quantity of crack cocaine to Dalton. After she was arrested and advised of her *Miranda* rights, Mitchell also signed a confession. This evidence is sufficient. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Williams v. State*, 218 Ga. App. 571, 572 (1) (462 SE2d 457) (1995).

2. Mitchell alleges that the trial court committed harmful error by allowing lead investigating officer James Perry to "violate the rule of sequestration." Before testimony began Mitchell's counsel asked that all witnesses, specifically including Perry, be sequestered, or that Perry be required to testify first if he was not sequestered. It is apparent from the colloquy between the court and defense counsel that Perry, as the lead investigating officer in the case, had remained in the courtroom to assist the prosecuting attorney during Mitchell's first trial, which had ended in a hung jury. In this first trial, Perry had testified after other State witnesses, and it is apparent that defense counsel and the court expected the prosecution to desire Perry to remain in the courtroom at counsel table to assist the prosecutor during the second trial also. The trial court denied the sequestration request as to Perry on the ground that Perry had already tes-

tified at the first trial and was therefore subject to impeachment if he changed his testimony. Perry was the second witness called by the State, was recalled for further testimony after Agent Dalton testified, and was called a third time after Mitchell testified. Mitchell objected to Perry's being recalled after Dalton's testimony, and the trial court overruled the objection.

OCGA § 24-9-61 provides: "[I]n all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness." However, "the trial court, in the exercise of its discretion, was authorized to permit the chief investigating officer to remain and assist in the orderly presentation of the State's case." *Johnson v. State*, 198 Ga. App. 316 (4) (401 SE2d 331) (1991). The trial court did not abuse its discretion in allowing the lead investigator to remain in the courtroom.

Mitchell also argues that it was error to allow Perry to be recalled to testify multiple times. Pretermitting the question of whether Mitchell's enumeration of error was specific enough to raise this issue, the trial court has discretion to allow such repeated testimony by an unsequestered lead investigator. *Dunbar v. State*, 209 Ga. App. 97 (1) (432 SE2d 829) (1993). We find no abuse of discretion here.

3. Mitchell also alleges error in the court's overruling of his objection to and motion to strike a comment by Agent Dalton, which Mitchell contends impermissibly expressed Dalton's opinion that Mitchell was guilty. Dalton testified that he would not overstate his certainty in his eyewitness identification of Mitchell because "[m]y job is not to put innocent people in jail, only the people who commit these acts of crime."

"Ordinarily, a witness may not express his opinion as to an ultimate fact, because to do so would invade the province of the jury." *Fordham v. State*, 254 Ga. 59 (4) (325 SE2d 755) (1985). When a witness states such an impermissible opinion, however, the error may be cured by appropriate remedial action of the trial court. See *Grayer v. State*, 181 Ga. App. 845, 846 (1) (354 SE2d 191) (1987). Such an error may also be harmless where the evidence against the defendant is overwhelming, and the court instructs the jury that they alone are to decide the case's outcome. See *Nolton v. State*, 196 Ga. App. 690, 691-692 (2) (396 SE2d 605) (1990).

In the case before us, any conclusion implied by Agent Dalton's comment was merely cumulative of the obvious import of his explicit and proper testimony, summarized in Division 1 above. Moreover, the court charged the jury on the presumption of innocence; the State's burden to prove guilt, including identity, beyond a reasonable

doubt; the evaluation of identification testimony; the elements of the charged offense; and the jury's exclusive responsibility to decide guilt or innocence. Any error in overruling this objection was thus harmless because, like the erroneous admission of conclusory testimony in *Carroll v. State*, 185 Ga. App. 857, 858-859 (1) (366 SE2d 232) (1988), "in the context of the other evidence it is highly probable that the error did not contribute to the judgment." (Citation and punctuation omitted.) Id. at 858. See generally *Palmer v. State*, 186 Ga. App. 892, 901 (4) (369 SE2d 38) (1988).

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Pope, P. J., Andrews and Smith, JJ., concur. Beasley, C. J., concurs specially. Blackburn and Ruffin, JJ., concur in part and dissent in part.*

BEASLEY, Chief Judge, concurring specially.

I agree with the logic of the dissent, but we are governed by *Chastain v. State*, 255 Ga. 723, 724 (2) (342 SE2d 678) (1986), which derives from earlier cases cited therein. See, in addition, *Norman v. State*, 255 Ga. 313, 316 (3) (338 SE2d 249) (1986); *Davis v. State*, 242 Ga. 901, 903 (3) (252 SE2d 443) (1979); *Shaw v. State*, 102 Ga. 660, 666 (5) (29 SE 477) (1897); *Keller v. State*, 102 Ga. 506, 508 (1) (31 SE 92) (1897).

The common law, and now statutory, right of sequestration is "a substantial and positive right." *Poultryland v. Anderson*, 200 Ga. 549, 562 (2) (37 SE2d 785) (1946). The object of the rule is "to prevent one witness from being taught by another as to the testimony he should give." Id. at 561-562 (2). It serves the truth-finding process by recognizing that witnesses are subject to being even subconsciously influenced by what another testifies under oath. The rule prevents an innocent shading as well as a deliberate falsification of testimony based on another's testimony. See also *O'Kelley v. State*, 175 Ga. App. 503, 504 (1) (333 SE2d 838) (1985). *Poultryland* illustrates its application in civil cases; its application in criminal cases such as this one is even more critical because upon its proper application depends a person's liberty.

As recognized by the dissent, the trial court may permit a witness to remain in the courtroom to advise the non-objecting party in the presentation of its case. *Poultryland,* supra. In this instance, the nature of the unsequestered witness's testimony was not directly the alleged transaction. The witness was not a witness to it or involved in it. His testimony related instead to Mitchell's inculpatory statement, which he obtained when she was arrested two months after the event and brought to the police station. The statement itself did not constitute a confession as to the particular sale charged but rather is constituted simply of defendant's signature below the handwritten notation of the officer: "Admits having sold cocaine before, but says it

wasn't hers."

Identity of Mitchell as the seller of cocaine to Agent Dalton, who saw the seller only on that one brief occasion, was the primary issue in the case, and there was conflicting evidence such as the description of the seller and of the house where the transaction occurred. The court did not specifically instruct the jury to consider the effect of witness Perry's hearing of others' testimony on weight and credit of that witness's own testimony. See *Johnson v. State*, 258 Ga. 856, 857 (4) (376 SE2d 356) (1989), which recognizes the ameliorative effect of such a charge.

Although the record does not reveal the cause of the first mistrial, it does reflect that the jury at this second trial deliberated nearly four and one-half hours before reaching a verdict of guilty. Thus it is evident that the jury did not easily reach its verdict despite the trial being short. I find no clues which would lead to the conclusion that the non-sequestration was harmless. Denial of the right conferred by statute is "presumptively injurious." *Hall v. Hall*, 220 Ga. 677, 679 (1) (141 SE2d 400) (1965). Compare *Johnson*, supra at 857 (4).

Nevertheless, we must defer to the trial court's discretionary allowance. Although no "proper foundation for an exception to the sequestration rule" was *expressly* laid by the State, see *Davis*, supra at 904, and *Norman*, supra at 316, *Chastain* did not require it. It was enough in *Chastain* that the witness was the prosecutor, and Perry was identified as the prosecutor on the indictment. If a reason must be shown as well, we must assume that the court, which was aware of the prior trial, regarded the same basis as existing again, that the witness was needed to assist in the orderly presentation of the State's case.

RUFFIN, Judge, concurring in part and dissenting in part.

I respectfully dissent and disagree with the judgment and the majority's reasoning in Division 2. OCGA § 24-9-61 provides: "[I]n all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness." This Court has long recognized several exceptions to the right of sequestration, including the right of the chief investigating officer to remain and assist in the orderly presentation of the State's case. See, e.g., *Nelson v. State*, 208 Ga. App. 671, 673 (5) (431 SE2d 450) (1993). However, under the rule of sequestration, "[t]he burden of showing an exception (where the witness is needed to advise the district attorney, or where the absence of an official witness would impair the efficiency of the court) is on the [S]tate. [Cit.]" *James v. State*, 143 Ga. App. 696

(2) (240 SE2d 149) (1977). If the State fails to meet this burden, the trial court abuses its discretion in permitting a witness to remain in the courtroom throughout the testimony. *Montos v. State*, 212 Ga. 764, 765 (3) (95 SE2d 792) (1956) (the State made no contention that it needed the officers' assistance in the conduct of the case, nor was any reason given other than that they were officers, thus harmful error resulted); compare *Wilson v. State*, 158 Ga. App. 174, 176 (7) (279 SE2d 345) (1981) (prosecutor stated his need for the services of the witness during trial, thus no abuse of discretion).

In the present case, Mitchell's counsel asked that all witnesses, specifically investigating officer James Perry, be sequestered. Mitchell argued that Perry was not the true case agent and, therefore, could not assist the prosecutor. While it is apparent from the colloquy that Perry had remained in the courtroom during Mitchell's first trial, we do not know the reasons for this exercise of the court's discretion, and that issue is not before us. What is before us is Mitchell's request for sequestration in the present case, and the court's denial of this request as it applied to Perry because "[i]n view of the fact that everybody's testimony is basically fixed at this point because they have already testified under oath at the prior trial, I think I will deny your request and not interfere with the State's decision about how to orderly present their case." Significantly, the State, through the district attorney, did not speak during the entire exchange.

It follows that I cannot conclude that the State met its burden to show an exception. There is nothing in the record before us to support any contention that Perry was needed to assist the State in its presentation of the case. Not only is the colloquy insufficient to support this contention, but I do not believe the colloquy is sufficient absent an affirmative contention by the State that an individual is necessary to assist the prosecutor in the case. Accordingly, I believe the trial court abused its discretion in allowing Perry to remain in the courtroom.

Likewise, I cannot agree that the trial court properly exercised its discretion in permitting Perry to testify multiple times after the first witness testified. While it is clear a trial court has discretion in such matters, this discretion must be based upon a showing by the State of some need not to call the unsequestered witness first. *Croom v. State*, 165 Ga. App. 676 (2) (302 SE2d 598) (1983); *Stuart v. State*, 123 Ga. App. 311, 312 (1) (180 SE2d 581) (1971). Failure to present the unsequestered witness first or to offer a sufficient reason for not doing so constitutes an abuse of discretion. *James*, supra at 697 (2); *Stuart*, supra at 313. "The state here showed *no reason* why [Perry] should not have been called to testify first, . . . and it was an abuse of discretion for the court to permit this sequence of testimony without such a showing." (Emphasis in original.) *Whitfield v. State*, 143

Ga. App. 779, 780 (240 SE2d 189) (1977).

The two cases cited by the majority in support of its position, *Johnson v. State*, 198 Ga. App. 316 (4) (401 SE2d 331) (1991), and *Dunbar v. State*, 209 Ga. App. 97 (1) (432 SE2d 829) (1993), contain insufficient facts to determine whether the State offered a sufficient reason for not sequestering the witness or for recalling the unsequestered witness, but I would assume that both cases applied the correct law and required the State to prove these exceptions.

While the State correctly argues that a violation of the rule of sequestration "goes to the credibility rather than the admissibility of [Perry's] testimony,"[1] this case does not involve a *violation* of the rule. Rather, it involves an abuse of discretion by the trial court in refusing to implement the rule to include Perry. An error which possesses the power of harm portends the promise of correction. Since the trial court's error deprived Mitchell of a substantive right, a new trial should be granted. See, e.g., *Massey v. State*, 220 Ga. 883, 891 (5) (142 SE2d 832) (1965), appeal dismissed, 385 U. S. 36 (87 SC 241, 17 LE2d 36) (1966); *Poultryland v. Anderson*, 200 Ga. 549, 561 (2) (37 SE2d 785) (1946).

I concur in the court's judgment in all other respects.

I am authorized to state that Judge Blackburn joins in this concurrence in part and dissent in part.

DECIDED SEPTEMBER 5, 1996 —
RECONSIDERATION DENIED SEPTEMBER 25, 1996.

*Word & Mitchell, Gerald P. Word*, for appellant.
*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Kevin W. Drummond, Assistant District Attorneys*, for appellee.

---

[1] *Johnson v. State*, 258 Ga. 856, 857-858 (376 SE2d 356) (1989). See also *Jordan v. State*, 247 Ga. 328, 347 (10) (276 SE2d 224) (1981); *Nelson*, supra at 673. In *Jordan*, the Supreme Court held as follows: "In the interest of clarity and uniformity, in conformity with the trend toward witness competency, and in view of the constitutional rights of a defendant to call witnesses in his or her defense, we hold that a witness who has violated the rule of sequestration in a criminal case shall not be prevented from testifying. [Cits.]" *Jordan*, supra at 347. "A party's remedy for a violation of the rule is to request the trial court to charge the jury that the violation should be considered in determining the weight and credit to be given the testimony of the witness. [Cit.]" *Johnson*, 258 Ga. at 857-858.